Tillyer et al. v. The Van Cleve Glass Co.

---

## EVIDENCE—CONTRACTS—CUSTOM.

[Cuyahoga Circuit Court, June Term, 1896.]

Caldwell, Hale and Marvin, JJ.

WILLIAM TILLYER ET AL. V. THE VAN CLEVE GLASS CO.

1. ADMISSION OF STATEMENTS MADE BY VENDOR'S AGENT.

Where one purchases a quantity of goods, and afterwards makes complaint to the vendor as to their quality and condition, and the vendor sends a person experienced in the business and whose expenses are paid by the vendor: *Held*, that such person was the agent of the vendor and that what he said while making the inspection is a part of the *res gestae* and admissible in evidence.

2. VENDEE MAY SHOW QUALITY OF THE GOODS PURCHASED—WHEN.

In an action by the vendor for the purchase price of goods, it is competent for the vendee to show that the quality of the goods was such that they could not be sold in vendee's market for goods of the grade for which they were bought, but that they had to be sold, if sold at all, as a lower grade.

3. PAYING FOR GOODS BEFORE RECEIVING THEM—EFFECT.

Where the vendee receives his goods at different times, it is competent for him to show, by proper testimony, that the drafts accompanying the bills of lading were paid before the goods were received. Such testimony tends to rebut any inference of a waiver of any defect in the goods received.

7 Dec. 14

**4. PROOF OF CUSTOM EXISTING AMONG BUYERS OF GLASS.**

Where one receives a consignment of glass which he has purchased and does not make any complaint regarding its quality or condition until some time after it was received, and it was then claimed by the vendor that there was a waiver of any defect that might exist in the glass. To rebut this inference of waiver, the vendee may give evidence that there was a custom on the part of buyers of glass to stock up in summer and store the glass in a warehouse, and that for this reason the vendee did not inspect his glass as soon as he would have done if the glass was to have been sold at once.

**5. MEANING OF CONTRACT TO DELIVER GOODS F. O. B.**

Where a contract for the delivery of glass states that the glass is to be delivered F. O. B. at Cleveland, this language means that the glass is to be delivered in Cleveland, and the law applicable to such a contract requires the seller to deliver to the purchaser at Cleveland good merchantable glass, both as to quality and as to condition.

**6. INTRODUCTION OF A CUSTOM TO EXPLAIN A CONTRACT.**

If a contract, in its terms, is definite and certain, custom cannot be introduced to explain what needs no explanation.

**7. WHAT IS MEANT BY CUSTOM.**

Custom is a species of hearsay testimony and in its most extended sense means a rule of action which extends back beyond the recollection of living witnesses, and as in this sense put upon the same basis as hearsay testimony in regard to other ancient matters that have their beginning beyond the recollections of living witnesses.

**8. CUSTOM AS APPLIED TO CONTRACTS.**

Custom as applied to contracts pertains only to explaining what parties meant by a contract where it is left uncertain by them.

**9. WHO ARE COMPETENT TO TESTIFY TO CUSTOMS EXISTING IN TRADES.**

Only witnesses who are experienced in a certain trade can testify to the custom existing in that trade, and their testimony is not to be given as a matter of opinion, but as a matter of facts. By a matter of fact is not meant that individual instances can be testified to.

**10. WHAT CONSTITUTES A WARRANTY.**

To constitute a warranty, no particular form of words is necessary in the sale of personal property, and while a mere expression of opinion is not sufficient to constitute a warranty, any clear, positive affirmation by the vendor during the negotiation will be construed an an express warranty. An affirmation at the time of the sale is sufficient, provided the affirmant really intended to warrant —not simply to express an opinion. An honest expression of opinion does not amount to a warranty. Affirmation by a vendor upon which he intends the vendee to rely, and upon which the vendee does rely, are warranties.

**11. LANGUAGE AMOUNTING TO A WARRANTY.**

Where the vendor agrees to sell certain glass, the quality to be "second and third," such language amounts to a warranty, and not merely a description of the kind and character of the glass sold.

**12. THE WARRANTY SURVIVES THE ACCEPTANCE OF THE GOODS.**

The warranty in a contract for the sale of glass survives the acceptance of the goods, and it is, therefore, error for the court to charge that if the goods were received and used after the purchaser saw, or had an opportunity to see and know their condition, that he could not afterwards be heard to complain and recover damages of the vendor because the glass was not of the quality called for by the contract.

ERROR to the Court of Common Pleas of Cuyahoga county.

CALDWELL, J.

The case is sufficiently stated in the opinion.

The parties to this action, on May 6, 1889, entered into a written contract, as follows :

Tillyer and Company say to Van Cleve Glass Company :

" We hereby agree to sell to you 5,500 boxes window glass, at 80 per cent. and 20 per cent. discount from the present price list, said glass to have 20 per cent. in first bracket, and 20 per cent in the second bracket, balance of 60 per cent. to be assorted brackets. Quality to be second and third. Terms of sale to be 2 per cent. from bill, and you to accept our draft at one day sight on presentation of bill and bill of lading ; you have privilege of putting in some double at 85 per cent. from list, same terms as above. Glass to be shipped as fast as can be got ready and delivered F. O. B. at Cleveland, by 15th day of July, 1889."

This was accepted by the Van Cleve Glass Company.

The defendant in error delivered to the plaintiffs in error fifty-one and thirty-four boxes at Cleveland, Ohio. Of this number of boxes, thirty-three hundred and ninety-one purported to be second grade glass, which were branded "Quality A," and fifteen hundred and forty-three boxes to be "Quality 3," which were branded "Quality B." The grade known as "Quality 2" was the same as " Quality A " in the trade, and "B" and number 3 were known as the same quality in the trade. This glass was shipped in nine or ten different cars, and with the shipping bill of each car was forwarded a draft on the Van Cleve Glass Company for the price of the amount of glass in the car. These drafts were all paid but the last one, which the Van Cleve Glass Company refused to pay, and this suit was brought for the recovery of the amount of that draft.

The answer of the defendant denies each and all averments in the petition after certain words, designated in the answer. It sets out that the plaintiffs are manufacturers of glass ; that the defendant is a wholesale dealer in glass. It admits the contract as pleaded in the petition ; and the answer sets out that there are in the glass market of the United States four grades of window glass, which are known by different names in the eastern and western markets ; the four grades and qualities being called in the eastern market, beginning with the best quality, 1st, 2d, 3d and 4th quality : and in the western market, the grades beginning with AA, A, B and C. The grade or quality known in the eastern market as " 2d " being known in the western market as " A ; " and the grade or quality known in the eastern market as " 3 " being known in the western market as " B " ; and that Tillyer and Company warranted that the quality should be 2d and 3d, and that this referred to the grades or qualities mentioned. That the plaintiffs did not deliver to defendant fifty-five hundred boxes of window glass, but only fifty-one hundred and thirty-four boxes ; and that the quality sold for the 2d quality and branded as quality " A," were not of that quality, but of an inferior grade and quality known as " 3 " or " B," or even worse ; and that the boxes sold and delivered as quality " 3," and branded as quality B," did not contain that, but were of the inferior grade and quality of " 4 " or " C." Each of said grades or qualities is of different brand or value from all others ; qualities " 3 " and " 4 " being of less value than quality " 2 ; " and quality " 4 " of less value than quality " 3." That by the failure of the plaintiffs to deliver the qualities specified, which were the qualities ordered of said plaintiffs by said defendant under this contract, said defendant was damaged by said plaintiffs in the sum of $612.32. Neither was the glass properly packed in said boxes, in consequence of which a large amount of said glass, amounting to ten per cent. thereof, when the same was unpacked after delivery to these parties on board the cars at Cleveland, Ohio, was found to be broken, the value of said broken glass amounting to $922.25. Since the making of the contract, the price of glass such as described in the

contract has increased in the market by the sum of 23 cents per box, and by the failure of the plaintiffs to deliver to defendant the remainder or said fifty-five hundred boxes, defendant has been damaged by plaintiffs in the further sum of $227.18; and that plaintiffs charge defendant with glass as delivered, which was not delivered, amounting, in an invoice on the 23d day of May, to the sum of $4.16. That in an invoice on the 6th day of July, 1889, there was missing one box of 22 x 28 "B" single, amounting to $2.04. From time to time, as plaintiffs forwarded to defendant their glass, plaintiffs drew on defendant drafts for the price of said glass, which were paid by the defendant, and the defendant attaches an Exhibit, "A," and marks it part of his answer, which shows the debit side and the true statement of the drafts drawn and paid by the defendant, and the discount to which they were entitled on the payments, showing said shortages, and in fact a complete statement of the entire account as understood by the defendant; and defendant avers that there is due, by reason of the premises, from the plaintiffs to this defendant, the sum of $696.13, with interest thereon from the 15th day of July, 1889.

Numerous errors are assigned here, for which a reversal of the judgment is asked in this court.

Some of these errors assigned pertain to the ruling of the court upon the admission and rejection of testimony. Such of these rulings as we think it necessary to notice, are as follows :

On page 65, of the record, the court ruled out what Yarnell's man said. It appears from the record, that when complaint was made by the plaintiffs in error to the defendant in error in the quality and condition of the glass, the defendant in error sent a person experienced in the glass business, who was in the employ of Yarnell, to inspect the glass in Cleveland, and it appears, from a letter written by defendant in error, that the expenses of Yarnell's man were paid by the defendant in error. We are of the opinion that the record shows that this man sent to Cleveland was the agent of the defendant in error, and if that is true, what he said while making the inspection is a part of the *res gestae*, and should have been submitted in evidence.

On page 66, the defendant undertook to show by Mr. Van Cleve that the quality of the glass was such that it could not be sold in the Cleveland market for glass of the grade for which it was bought, but it had to be sold, if sold at all, as a lower grade. This evidence should have been admitted by the court.

On page 67, the defendant below undertook to show by proper testimony that the drafts accompanying the bills of lading were paid before the glass was received. This the court excluded. This testimony should have been admitted. It is now claimed, that by the defendant below receiving the glass and paying for the same, there was an acceptance of the same under the contract, and that it cannot now be heard to complain. So that it became material for the defendant below to show by proper testimony that it had paid for the glass, so far as it had paid at all, before it arrived in Cleveland.

It was claimed, in the trial of the case, that by the Van Cleve Glass Company receiving the glass and not making any complaint of its quality or condition until some time after its being received, there was a waiver of any defect in the glass, as well as a waiver of the broken condition of the same. To rebut this inference, the defendant below undertook to show, on pages 67 and 68 of the record, that there was a custom on the part of the manufacturers to shut down their works during the fall, and a custom

Tillyer et al. v. The Van Cleve Glass Co.

on the part of the buyers to stock up in summer; and the court excluded this testimony. If such a custom existed, and if followed up by evidence on behalf of defendant, as defendant attempted to do in this case, that much of this glass, when bought, was bought not to be used for some time to come, but to have a stock on hand while the factory was closed, and that it had taken this glass when purchased, and stored it in a warehouse, and for this reason did not inspect it as soon as it would have done if it was to be at once sold. This evidence should have been admitted, and we think it was error on the part of the court to exclude it.

On pages 81, 172, 219, 220, 136, 11 and 186, there is alleged to be error in this: the defendant below produced various witnesses who had examined the glass, and who were called in the case to testify as to its quality, and as to its broken condition. The court refused to allow these witnesses to testify as to the percentage of poor glass in the boxes, and how many panes the boxes would average of broken glass, and refused to allow them to testify as to the grade of the glass as it appeared when inspected by them. It was error for the court to exclude this testimony. It would be quite impossible for the parties to count the broken glass in each box, separately, and to testify in court as to the amount of glass found broken in each box, separately, in the entire fifty-one hundred boxes.

The defendant below offered testimony to show that the boxes had larger apertures than is customary in shipping glass, giving the glass an opportunity to move in the boxes; and defendant further offered testimony to show that these apertures were improper, and were one cause, if not the principal cause, of so much glass being broken. This testimony was excluded by the court, and the exclusion was error.

The plaintiffs below undertook to show by testimony that there was a custom in the glass trade that the buyer should stand the loss of breakage. This evidence was objected to by the defendant below, because the contract, as it claimed, was definite and specific in its language, wherein it states that the glass is to be delivered f. o. b. at Cleveland, and that this language means that the glass is to be delivered, is contracted to be delivered, in Cleveland; and that the law applicable to such a contract requires the seller to deliver to the purchaser at Cleveland good merchantable glass, both as to quality and as to condition. The plaintiffs below, in proving this custom, offered testimony of the custom of certain sellers by introducing their circulars, showing that in their circular they require the purchaser to stand the breakage. This testimony was admitted, and these circulars read to the jury. The plaintiffs below also introduced testimony which was admitted by the court, as to what the custom is when there is no contract; and also what the custom is where there is a contract. If the language in the contract "Delivered f. o. b. at Cleveland" imposes upon the defendant in error a legal obligation to deliver glass in merchantable condition at Cleveland, then the custom cannot be introduced to change the rule of law. Custom is a species of hearsay testimony, and in its most extended sense means a rule of action which extends back beyond the recollection of living witnesses, and as in this sense, put upon the same basis as hearsay testimony in regard to other ancient matters that have their beginning beyond the recollection of living witnesses; but custom, as applied to contracts, is not of this extended and ancient character, but pertains only to the explaining what parties meant by a contract where it is left uncertain by them. If the contract, in its terms, is definite and certain, custom cannot be introduced to explain what needs no explanation. If the law of the case

is clear and definite as determined by the courts, then custom cannot be introduced to change the law governing the contract. After any rule of action, or phrase or terms used in contract has been repeatedly adjudicated by the courts, it no longer remains a custom, but becomes settled law. There was a time in the trade when "Delivered f. o. b. at Cleveland" would probably need explanation. That explanation could be had by showing how dealers interpreted the phrase. After repeated interpretation of this phrase, it then becomes law, and we suppose that the expression "Delivered f. o. b. at Cleveland" needs no longer an explanation of custom to understand it, but it has passed into the second stage where it has by repeated adjudication of the courts, become a rule of law; and as we understand the rule, it is that the seller, where he agrees in his contract to deliver f. o. b. at the place of business of the purchaser, must deliver at that place, to him, the articles in quality such as he has agreed to sell, and in proper condition; and yet, we are not prepared to say but that in a case like this, where glass is shipped, a custom may not grow up among dealers in that article, by which, instead of the shipper standing the entire loss, the purchaser shall stand a part of the entire loss. Glass is different from most articles that are shipped, because it is so easily broken. If this custom is shown by the testimony to exist in the glass trade, as well known to both seller and buyer, we cannot say it was not proper for the court to treat them under this contract as dealing with reference to that custom; hence, we think that testimony to prove custom of this character would be properly admitted in evidence. Only witnesses who are experienced in the trade, can testify to the custom existing in that trade; and their testimony is not to be given as a matter of opinion, but as a matter of fact; and by a matter of fact, we do not mean that individual instances can be testified to. Individual instances cannot be used to establish a general rule; and so far as circulars were introduced and read to the jury, we think that testimony was incompetent, and it is not the proper way in which to prove a general custom.

Mr. Tillyer was permitted to testify as to how he made his glass; what kind of coal he used in burning it, and that Van Cleve knew how the glass was burned, and that he, Van Cleve, knew that such glass was not of the same quality, though of the same grade, as the other glass. This evidence was not properly admitted. The glass sold to be No. 2 and 3, as known in the market, and it was the obligation of the seller to furnish that grade as known in the market.

One principal controversy in this case is as to whether "Quality to be 2d and 3d," is a warranty, or only a description of the kind and character of the goods, and merely a condition precedent. To constitute a warranty, no particular form of words is necessary in the sale of personal property; and while a mere expression of opinion is not sufficient to constitute a warranty, any clear, positive affirmation by the vendor, made during the negotiations, will be construed as an express warranty. An affirmation at the time of the sale is sufficient, provided the affirmant really intended to warrant—not simply to express an opinion. An honest expression of opinion does not amount to a warranty. Affirmations by a vendor upon which he intents the vendee to rely, are warranties.

We are of the opinion that when Tillyer and Company agreed to sell No. 2 and 3 glass, that they warranted the glass to be of that quality as known to the trade; and that the purchaser expected to receive that class and grade of glass.

Various exceptions were taken to the charge of the court below. We will not undertake to notice all of them, but the court charged, among other things:

"Should you be satisfied that the defendant had an opportunity to, and by the use of ordinary care could have discovered the breakage that is now claimed, or did discover the same, and then went on, without notice to the plaintiffs at the time of such discovery, or opportunity to discover, the defendant cannot now be heard to complain of the breakage, though you should find that the plaintiffs, under the contract, were to stand the loss of the breakage in excess of two per cent. I further say to you, that if the defendant, in the usual course of receiving and handling glass, and vending the same, in the quantities called for by the contract and furnished by the defendant, and by the use could or did, by such use and customary handling of the same, discover or know that the glass was not of the quality called for by the contract, it cannot keep possession of and vend the same without notice to the plaintiffs, and the defendant could not now be heard to say that the glass was not of the quality called for by the contract; and for that reason no recovery could be had against the plaintiffs in this action."

We have already held that the language used in this contract, as to the quality of the glass, is a warranty.

This last part of the charge, as read, raised the question whether a purchaser, when he buys goods with an express warranty as to the quality, and receives the goods and uses the same, can, when sued for the price, recoup damages he has suffered, by reason of the goods not being of the quality warranted.

The defendant in error claims that "*caveat emptor*" applies to this contract; that in the first place there was no warranty, and if there was a warranty, it does not survive the acceptance of the goods.

Story on Sales, sections 359 and 365, says:

"The tendency of all modern cases on warranty, is to enlarge the responsibility of the seller, to construe every affirmation by him to be a warranty, and frequently to imply a warranty on his part from acts and circumstances whenever they were relied upon by the buyer. The maxim of *caveat emptor* seems gradually to be restricted in its operation, and limited in its dominion, and be set with the circumvallations of the modern doctrine of implied warranty until it can no longer claim the empire over the law of sales, and is but a shadow of itself. Gradually the old common law rule of *caveat emptor* has been losing ground, and the law has been tending toward the doctrine of the Roman law, which is its antipode—*caveat venditor*—until it now occupies a middle ground between the two, by requiring the strictest good faith on the part of the seller in all that he says and does, and throwing on the buyer the responsibility for any foolish mistakes or wrong conclusions which may result from his trusting his own judgment."

If there is no warranty, then *caveat emptor* applies. And the rule as is followed by all recent decisions, with the exception of one or two states, New York and Wisconsin, is that the doctrine of *caveat emptor* has no place in the contract where there is an express warranty. And the courts have quite wisely held that in contracts of this kind the warranty survives the acceptance of the goods, and this doctrine seems to be a corollary of the rule just stated.

The charge of the court is that if these goods were received and used after the purchaser saw or had opportunity to see and know the con

dition of the goods, that he cannot now be heard to complain. We are of the opinion that the rule of law, as given by the court, is wrong. The same rule was given by the court in regard to breakage, and is, we think, error.

These errors in the charge were also calculated to mislead the jury into thinking that, under the charge of the court, if it found that the plaintiffs had received these goods when they were not in proper condition, it must refuse plaintiffs in error any damages on account of the glass not shipped, and this was error.

Other errors are assigned to the charge on legal questions involved, but they have been fully discussed in what has been said upon the ruling of the court upon the admission and rejection of evidence. For these errors, on the part of the court below, the case is reversed and remanded for a new trial.

*White, Johnson, McCaslin & Connor,* for Plaintiffs in Error
*Blandin & Rice,* for Defendant in Error.